UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:25-MJ-00146 (MAU) |
| | : | |
| CHRISTIAN ENRIQUE | : | |
| CARRAS TORRES | : | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION
TO GOVERNMENT'S REQUEST FOR DETENTION**

Based on a complaint charging Mr. Torres with one count of assault on a federal law enforcement officer, the government has requested pretrial detention of Mr. Christian Enrique Carrias Torres, pursuant to 18 U.S.C. § 3142(f)(2)(A), asserting that Mr. Torres is a serious flight risk. The government's request for pretrial detention must be denied because Mr. Torres was brought to this jurisdiction in the custody of Immigration and Customs Enforcement and, should he be released in this case, will return to their custody. In other words, Mr. Torres is not a risk of flight at all because he will be in secured detention and incapable of flight. In all practical terms, the government has not proven, by a preponderance of the evidence, that Mr. Torres is a serious flight risk because Mr. Torres cannot volitionally flee. The government has not otherwise made the case that he is even a moderate risk of flight. This Court thus has no authority to place Mr. Torres in preventative detention.

**Introduction**

Mr. Christian Carrias Torres is a 33 year old man who has never had contacts with the criminal justice system. His only known contact with law enforcement came while he was at work – delivering food by scooter in Washington D.C. At about 10 am on a Saturday morning, Mr. Torres was working when a group of masked men wearing black shirts and blue jeans

suddenly rushed at him. Witnesses who gathered state that the masked men refused to say who they worked for. Their vehicle had Maryland plates. They were dressed like this.








Their vehicles appeared to be from the State of Maryland.



Bystanders watching the assault on Mr. Torres were heard questioning the purported law enforcement officers about their origin – whether they were from MPD, Maryland or ICE. The

officers refused to respond or show any parts of their face. The officers were heard speaking English only to each other and to Mr. Torres. Mr. Torres does not speak English.

The government alleges that after the officers approached Mr. Torres, he struggled and resisted on three separate occasions. The video does not show any resistance but Mr. Torres was Tasered by the police. The video does show at least one officer holding some sort of weapon in his left hand as the five officers apprehend the unarmed Mr. Torres.



**Argument**

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention

prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); see also *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." Id. at 1405.

The government bears the burden of demonstrating, by a preponderance of the evidence, that preventative detention is necessary to ensure the safety of the community. There is no rebuttable presumption for detention so the Court must release Mr. Torres absent a showing that he represents a "serious risk of flight." The government acknowledges that Mr. Torres has an order of removal which necessitates that he will remain in secured detention, even with a release order from this Court.

> **I.     The government cannot show that Mr. Torres is a serious risk of flight**

The government argues that Mr. Torres is a serious flight risk because he lacks ties to the community. ECF No. 6 at 4. This is untrue. Mr. Torres is gainfully employed in the District and lives in the DMV area. In addition, Mr. Torres has never had any criminal charges and thus has never been under conditions of supervision that would reasonably assure his appearance in court (in the unlikely event that he be released by Immigration and Customs Enforcement). In any event, the government's arguments fall well short of supporting "the conclusion that [Mr. Torres'] pretrial detention is necessary in order to assure his presence at trial." *United States v. Nwokoro*, 651 F.3d 108, 110 (D.C. Cir 2011). This is especially true in light of the array of conditions available to the Court to assure his return.

The Bail Reform Act "establishes a two-step process for detaining an individual before trial." *United States v. Ailon-Ailon*, 875 F.3 1334, 1336 (10th Cir. 2017). The government may move for pretrial detention under certain circumstances. "If the court determines that there is such a risk, the government must prove at the second step of the process that there is 'no condition or combination of conditions that 'will reasonably assure the defendant's appearance as required as well as the safety of any other and the community." *Id.* In making this determination, the Court weighs the four 3142 factors.

The government here alleges solely that Mr. Torres presents a serious risk of flight. But Mr. Torres is under a removal order – if he is not detained by this Court, he will not be released – he will be in the custody of Immigration and Customs Enforcement. As such, he cannot be deemed a serious risk of flight.

The government's 3142 argument fails because the Bail Reform Act does not grant the power to detain individuals simply because they have been deemed removable by the executive branch. Congress permits preventative detention for defendants who pose a serious flight risk but a risk of flight is not synonymous to the risk of non-appearing because of a separate detainer. The pretext of the government's position is revealed in its own memorandum: "[Mr. Torres] poses a flight risk. He is a citizen of Venezuela, who was ordered removed by an immigration judge, and has been illegally in the United States since November 2024." ECF No. 6 at 4.

But courts have not interpreted "serious risk of flight" in this manner. One district court explained:

> It well may be that someone can pose a risk of "non-appearance" without posing a risk of "flight." The latter term seems to connote intentional [**10] and active movement to put oneself beyond the supervision of the court and the reach of criminal proceedings; this connotation is not inherent in the notion of "non-appearance," a term broad enough to cover negligent or other unintentional, and not just active and intentional, failures to appear. It would seem that "risk of

> flight" is a subset of "risk of non-appearance"—meaning that, depending on the circumstances suggesting a serious risk of nonappearance, a risk of non-appearance may not entail a risk of flight.

*United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1137 (D. Idaho 2023).

The Tenth Circuit agreed, determining that flight or "fleeing" as it appears in the Bail Reform Act does not include "involuntary removal." *Ailon-Ailon*, 875 F.3d at 1337. Examining the plain language of the statute, the court determined that "the ordinary meaning of 'flee' suggests volitional conduct" and pointed out that "an individual who has been arrested at a crime scene and involuntarily transported to a police station [would not be considered to have] fled the scene." *Id.* at 1338.

*Ailon-Ailon* also notes that the BRA has a provision for non-citizens but still applies the 3142 factors to such individuals "in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings. This provision demonstrates that a defendant 'is not barred from release because he is a deportable alien.'" *Id. (quoting United States v. Brown*, 2017 WL 3310689, at *4 (D.N.D. July 31, 2017) (unpublished) (because "Congress affirmatively extended to alien persons the same protections it affords citizens under the Act, . . . the court would violate the Bail Reform Act if it detained defendant based only on the fact he is an alien and ICE has filed a detainer"); *United States v. Stepanyan*, 2015 WL 4498572, at *2 (N.D. Cal. July 23, 2015) (unpublished) (noting the government's argument that a defendant's "status as a deportable alien itself bars him from release is incompatible with the clear directives of § 3142(d)").

Because the government cannot proffer a serious risk of flight, the court should end its inquiry and deny the detention request. But even if the court continues to the second step of the BRA analysis, the government has not demonstrated that there are no conditions or combination

of conditions that would reasonably assure Mr. Torres' presence and that the community would not be endangered. Because Mr. Torres will be in ICE detention, the government cannot meet this burden under the fourth factor. Mr. Torres should be released under any application of the 3142 factors because he presents no risk of flight or danger to the community.

### A. The 3142 factors do not justify preventative detention.

The government relies entirely upon its proffer that Mr. Torres was not entirely compliant upon arrest. But flight from the police is far from an unusual circumstance in a criminal case. The government points to no authority even suggesting that flight from police is sufficient to alone justify a finding of serious risk of flight, and thus preventative detention under 18 U.S.C. § 3142(f)(2)(A).

#### 1. The nature and circumstances of the offense

The nature and circumstances of the offense weigh heavily in support of release.

Mr. Torres was working on a Sunday morning as a food delivery driver. He received an order from Bluestone Lane to pick up three iced coffee beverages. As he left a coffee shop, a group of masked men wearing dark clothing began to shout orders at him. Witnesses reported: "They really just snuck up on him." *Federal officers detain, tackle moped driver amid Trump D.C. police crackdown*, Washington Post, August 17, 2025, https://www.washingtonpost.com/dc-md-va/2025/08/17/dc-arrests-violent-takedown-immigration/. There were many bystanders present, including a Washington Post reporter. The Post described the law enforcement officers as "agents wearing police vests without clear identification." *Id.*

The government proffers that Mr. Torres "immediately attempted to flee" and alleges that he "forcibly rose to his feet" and "attempted to flee again" causing an injury to the head of one of

the officers. Uninvolved witnesses told a different story. The Post report stated: "Carias Torres was initially forced to the ground by two officers, including one who appeared to use a stun gun, according to video and witness accounts." *Id.* "Video show the man and officers were in a physical struggle before another officer pushed the entire group to the ground, prompting the head injury." *Id.*

Mr. Torres was doing nothing illegal when he was suddenly apprehended by six masked individuals without obvious credentials. Given the sudden confrontation of Mr. Torres that precipitated this incident and the fact that he was working at the time, the nature and circumstances of the offense weigh heavily in support of release.

## 2. The weight of the evidence

The weight of the evidence in this case supports release. The charges against Mr. Torres, growingly popular with this U.S. Attorney's Office during the President's so-called emergency takeover of D.C. law enforcement, are supported by scant evidence. Publicly sourced video has already contradicted the statements by Homeland Security and the White House about the event. *Id.* (refuting Homeland Security spokeswoman Tricia McLaughlin's claims of an injury due to "violent resistance" by Mr. Torres).

In addition, the government must prove that Mr. Torres' actions were not in self-defense, particularly given that the officers did not identify themselves to him. "[W]here an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind, one might be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent." *United States v. Feola*, 420 U.S. 671, 686 (1974). The government cannot do so here. The officers repeatedly refused to identify

themselves and there is no evidence that they properly communicated to Mr. Torres that the purpose of their actions. The weight of the evidence thus supports release.

### 3. The history and characteristics of Mr. Torres

Mr. Torres is a gainfully employed man who has never been arrested and never been accused of any criminal conduct, assaultive or otherwise. Although the United States has recently demonstrated that a willingness to test the boundaries by alleging unsubstantiated, uncorroborated and uncharged acts against individuals like Mr. Torres, they have been unable to do even that here. That the government has been unable to even manufacture rumors against Mr. Torres speaks to his law-abiding history.

### 4. The government has not proved that there are no conditions or combination of conditions that reasonably assure the safety of the community or his presence in court.

Mr. Torres is a law-abiding individual who has never had a criminal case. He has never been under meaningful conditions of release. In addition, given that he will be detained by ICE if released, the government cannot reasonably claim that he is a danger to anyone if this Court releases him.

## Conclusion

Wherefore, for the foregoing reasons, the government has not met its burden of demonstrating that Mr. Torres is a serious flight risk or that there are no conditions or combination of conditions that will assure the safety of the community. Mr. Torres respectfully requests that the Court deny the government's motion.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
EUGENE OHM
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500